**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

**JOHN SCOTT BARMBY**
4010 Christiana Parran Road
Chesapeake Beach MD, 20732
*on behalf of himself and all others similarly situated,*
Plaintiff

**v.**

**Ourisman Chevrolet Co., Inc., d/b/a Chevrolet Marlow Heights**
4400 Branch Ave, Marlow Heights, MD 20748
Defendant

**Ourisman Imports Inc, d/b/a Ourisman Mitsubishi of Marlow Heights**
4404 Branch Ave, Marlow Heights, MD 20748
Defendant

**H Street Management LLC,**
4445 Willard Ave Ste 400
Chevy Chase, MD 20815-4641
Montgomery County
Defendant

**Christopher Ourisman**
7209 Exeter Road, Bethesda, MD, 20814-2347

Defendant

**Civil Action No. ________________**

**CLASS ACTION COMPLAINT**

**CLASS ACTION COMPLAINT AND JURY DEMAND**

1. Plaintiff John Scott Barmby by and through the undersigned counsel and on behalf of himself and other persons similarly situated (the "putative class"), sues Ourisman Chevrolet Co., Inc., (d/b/a Chevrolet Marlow Heights ("CMH")) Ourisman Imports Inc, d/b/a Ourisman Mitsubishi of Marlow Heights (hereinafter "MMH"), H Street

Management LLC, (the "Corporate Defendants"), and Christopher Ourisman, ("Defendants"), and complain as follows:

## INTRODUCTION

2. This action arises from defendants' failure to pay Plaintiff and the putative class the commissions they are owed in violation of the Maryland Wage Payment Collection Law, Md. Code. Ann., Labor & Employment Article § 3-501 *et seq.* ("MWPCL") and in violation of common law prohibitions on unjust enrichment and breach of contract.

3. Plaintiff brings this action on behalf of himself and a putative class of persons who currently are or were previously employed by the defendants who were compensated in part or entirely via the payment of commissions (the "putative class").

4. Plaintiff and the class bring claims under the MWPCL and under common law for unjust enrichment to remedy these violations.

## THE PARTIES

5. Plaintiff, John Scott Barmby, is an adult resident of the State of Maryland who was employed by the Defendants from approximately 2013 to June 13, 2022.

6. Plaintiff was an employee of Defendants as defined under the MWPCL, Md. Code Ann., Labor & Employ. Art. §3-501 *et seq.*

7. Defendant Ourisman Chevrolet Co., Inc., (d/b/a Chevrolet Marlow Heights ("CMH") is a corporation formed and headquartered in Marlow Heights, Maryland. Defendant CMH is engaged in the business of selling automobiles and related services and does business in this judicial district. The registered agent is Kenneth Powers, 4400 Branch Ave, Temple Hills, MD, 20748-1802.

8. Defendant Ourisman Imports Inc, d/b/a Ourisman Mitsubishi of Marlow Heights ("MMH") is a corporation formed and headquartered in Marlow Heights, Maryland. Defendant MMH is engaged in the business of selling automobiles and related services and does business in this judicial district.

9. H Street Management LLC is a business registered with Virginia State Corporation Commission (SCC), Clerk's Information System (CIS). The customer account number is #T0726440. The business address is 4747 Bethesda Avenue, Suite 200, Bethesda, Maryland 20814. The other Maryland business address 4445 Willard Ave Ste 400, Chevy Chase, MD 20815-4641, Montgomery County.

10. H Street is a management company engaged in a managing, overseeing, and implementing corporate policies and procedures for CMH, MMH and their employees, and sets the policies and procedures for MMH and CMH including the compensation policies for the employees at issue in this Complaint. H Street does business in this judicial district.

11. Defendant Christopher Ourisman is a Maryland resident, who is the majority owner of CMH and MMH and created and implemented the policies and procedures for the corporate defendants, including the compensation policies at issue here.

12. Defendants were Plaintiff's "employer" as that term is defined and/or interpreted by the MWPCL, Md. Code Ann., Labor & Employ. Art. §3-501(b).

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). This is a class action in which there are approximately eighty (80) class members in the proposed commission class, the combined claims of proposed class members exceed $5,000,000 exclusive of interest and costs, and members of the putative class are citizens

of different states than Defendants. The Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367.

14. The Court has personal jurisdiction over all Defendants. Defendants CMH, MMH and H Street are in Maryland, and conduct business in this judicial district. Defendant Christopher Ourisman resides in Maryland and conducts business in this judicial district.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because substantial events giving rise to Plaintiff's and the putative class members' claims occurred in Prince George's County Maryland and Defendants are subject to this Court's personal jurisdiction.

**FACTUAL ALLEGATIONS FOR INDIVIDUAL AND CLASS RELIEF**

16. Plaintiff is a former employee of Defendants and paid wages on a commission-based written pay plan. His most recent job title was Finance Operations Manager.

17. In addition to Plaintiff, Defendants paid putative class members under a written commission-based pay plan. These positions include the sales staff, management staff such as general sales managers, finance managers, and other management positions. (Hereinafter referred to as the "putative class").

18. The Plaintiff and putative class member were paid in the identical fashion: A percentage of the dealer profit according to the written pay plan, known as gross commissionable proceeds.

19. When the Plaintiff and the putative class members were hired, they were *required* to sign a written pay plan defining how commissions would be paid. (Hereinafter referred to as the "pay plan").

20. The written pay plan contained the terms and conditions for payment of the commissions to the Plaintiff and putative class members.

21. The more profit the Plaintiff and the putative class generated, the more income Plaintiff and the putative class members would earn through commissions.

22. The commissions owed to the Plaintiff and putative class members were not discretionary because defendants were contractually obligated to the Plaintiff and the putative class members per the written pay plan to pay commissions in a certain amount.

23. The pay plan detailed the commission percentages to be paid to Plaintiff and putative class members. The Plaintiff and the putative class were paid identically based on the gross commissionable proceeds.

24. The Defendants promised Plaintiff that Defendants would pay him the following commissions on sales:

**5% of the finance and insurance net after chargebacks and cancellations (backend profit)**
**3% of aftermarket net (backend profit)**
**1% of front end gross after policy, delivery, and gas. (Front end profit)**

25. The "net" contained in the pay plan refers to the net profit on each product or service. This "net" is also known in the industry as gross commissionable proceeds.

26. The pay plan did not contain any provisions allowing cost increase for overhead nor any pack, which are fictitious costs to cover dealer overhead.

27. The pay plan did not contain any provisions allowing Defendants to reduce, alter, or otherwise modify the commissions payable under the pay plan by adding dealer overhead, pack or other items to the vehicle/operating costs that covered overhead, fictitious or otherwise were known as pack. (*See* paragraphs 34 and 35 *infra* for improper cost increases and alterations of the pay plan).

28.  Plaintiff signed the pay plan on or about June 18, 2019.

29.  Defendants routinely violated the Plaintiff's pay plan, as well as the putative class members' pay plans, by paying less than the commissions agreed to in the written pay plan(s).

30.  The true and unaltered acquisition costs of each vehicle, and all alterations to the acquisition costs, were hidden from Plaintiff and the putative class. These costs and alterations were used to reduce commissions, and were and currently are accessible only in what are commonly known as back screens, journals, and ledgers, areas in the dealership software not accessible to the Plaintiff and putative class members.

31.  Commissioned employees, including sales managers, did not have access to the back screen(s) or a breakdown of real, true, or unaltered costs. Instead, commissioned employees were given only a commission sheet detailing commissions paid.

32.  The Defendants increased the operational costs of the dealerships by improperly inflating chargebacks, fictitiously increasing the costs to reduce the commissions to Plaintiff and putative class members.

33.  Defendants also refused to provide Plaintiff and putative class members with any breakdown of the chargebacks that reduced commissions. Instead, just a summary commission sheet was provided when wages were paid.

34.  The Defendants reduced the Plaintiff's and putative class members' commissions, by basing how they were calculated on artificially reduced profits of the dealership and by improperly increasing the costs in violation of the pay plan.

35. The Defendants added artificial costs, fees, and/or surcharges to the vehicle not authorized by the pay plan nor any agreement, implicit or express, including but were not limited to the following:

   a. Adding fictitious service charges to vehicles.

   b. Adding a fictitious $400 cost to all new vehicles. (Also known as pack)

   c. Adding a fictitious $500 cost to all used vehicles. (Also known as pack)

   d. Adding fictitious costs ranging from $89 to $389 to specific makes and models of new vehicles. (Also known as pack)

   e. Adding fictitious costs for services like cleaning or detailing used cars that were greater than the amount defendants actually paid for these services.

   f. Adding gas refilling charges to the vehicle costs when the defendant was reimbursed by the factory for PDI, pre delivery inspection: new vehicle preparation for sale.

   g. Misrepresenting the costs of aftermarket product to siphon off profit to third parties for their own benefit.

   h. Adding artificial, "estimated" chargebacks for future losses against profit as a cost, reducing commissions for which a there was never a credit reconciliation. (Charge back slush fund) (inflated losses that reduced profits and reduced commissions)

   i. When customers cancelled a product or service (for many reasons, including repossessions) the Defendants would charge back one hundred percent of the purchase price, not just the profit, which would reduce gross commissionable proceeds reducing commissions.

   j. Failure to pay commissions on "doc" fee, which is document processing fee.

  k. Artificially inflating service department repair orders.

36. Defendants' policy and practice of adding on artificial costs, fees, and/or surcharges to the vehicle costs and dealership overhead created extra profits for Defendants at Plaintiff's and putative class members' expense.

37. Defendants concealed the cost increases by designing and implementing the computer system to reduce access to specific costs and overhead that were only accessible to the accounting department and ownership.

## CLASS ACTION ALLEGATIONS

38. The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

39. The putative class in this case is defined as follows:

> **All individuals who are or were employed by Defendants CMH, MMH and H Street from September 2019 to the present, and who earned a commission on the sale of any used or new vehicle or product or service during that time span.**

40. Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to Federal Rule of Civil Procedure 23.

41. There are questions of law and fact in this action that are common to Plaintiff and to all putative class members.

42. These questions of law and fact are not only common to the class but predominate over any question affecting only individual class members. The predominating questions include, but are not limited to:

  a. Whether Defendants implemented the above-described cost increases

  b. Whether Defendants implemented any other similar cost increases.

  c. What software and other systems were used to maintain and itemize costs, and who had access to those systems.

  d. Whether accounting practices were identical for all commissioned employees of Defendants.

  e. Whether costs attributed to vehicles were changed after the sale had occurred.

  f. Whether the costs had any purpose other than reducing the commissions earned by Plaintiff and the putative class.

  g. Whether the reductions were authorized by the pay plans.

  h. Whether Defendants' use of the certain costs violates the Maryland Wage Payment and Collection Law.

  i. Whether Defendants concealed the use of the costs from the Plaintiff and the putative class members at the time they were hired

  j. Whether Defendants took any wrongful action.

  k. Whether Defendants packed the cost of new and used vehicles and whether the costs were authorized per the pay plan(s) and/or fictitious costs created for the sole purpose of reducing commissions for plaintiff and putative class

43. The claims of the Plaintiff are typical of the claims of the respective class members.

44. The Plaintiff will protect the interests of the class. The interests of Plaintiff and other class members are substantially identical.

45. Plaintiff's counsel has experience in complex litigation and class action proceedings and will adequately represent the interests of the class.

46. The putative class consists of at least 80 individuals, and the class is therefore so numerous that joinder of all members is impracticable.

47. Separate actions by individual class members would create a risk of inconsistent or varying adjudications of questions of law and fact that would establish incompatible standards of conduct for the defendants.

48. Because this action entails questions of law and fact common to all putative class members, which predominate over any questions affecting only individual plaintiffs, a class action is superior to other methods of fair and efficient adjudication of this litigation.

49. Most members of the putative class are unaware of their right to prosecute claims against Defendants.

50. No member of the putative class has a substantial interest in individually controlling the prosecution of a separate action, but if they do, they may exclude themselves from the class upon receipt of notice under Federal Rule of Civil Procedure 23(c).

## COUNT I
### Accounting

51. The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

52. Defendants were under a legal duty to accurately account for costs and revenue in calculating the commissions to be paid to plaintiff and the putative class.

53. When Plaintiff and the putative class earned commissions, Defendants were compelled to render such account, either explicitly or by paying the earned commission in full based on that account without improper reductions.

54. Defendants, by failing to disclose the costs used in calculations and by underpaying commissions, failed to render such account.

55. Plaintiff, on behalf of himself and the putative class, requests that defendants be ordered to fully and completely account for all commissions to which any of the above-named

reductions or any other similar reductions were applied, all monies that were paid to Plaintiff and putative class members, all deductions made from those monies, and all sums due to Plaintiff and putative class members during the relevant period.

56. Defendants were also under a legal duty to accurately account for hours worked, advances paid, and wages in calculating and paying Plaintiff and the putative class members their paychecks.

57. Defendants, by making false or improper deductions and failing to pay plaintiff and the putative class members full amounts of their paychecks, failed to render such account.

58. Plaintiff, on behalf of himself and putative class members, requests Defendants be ordered to fully and completely account for all deductions and all wages earned and paid to Plaintiff and the putative class members, including the actual costs associated with the sale of vehicles and services, and all sums due to Plaintiff and the putative class members because of any underpayment.

## COUNT II

### Maryland Wage Payment and Collection Law

59. The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

60. The commissions earned by Plaintiff and the putative class members are "wages" for purposes of the Maryland Wage Payment and Collection Law (MWPCL), Md. Code, Labor & Employment § 3-501.

61. Defendants MMH AND CMH are at times relevant hereto the employer of Plaintiff and the putative class members under the MWPCL.

62. The individual Defendant, Christopher Ourisman, as owner with operational control over MMH and CMH, including control over the nature and structure of commissions and the

reductions, constitutes an employer for purposes of the MWPCL, and is jointly and severally responsible for the wages owed to Plaintiff and the putative class members under the MWPCL.

63. Defendant H Street, as a management company engaged in a managing, overseeing, and implementing corporate policies and procedures for CMH, MMH and their employees, and setting the policies and procedures for MMH and CMH, including the compensation policies for the employees at issue in this Complaint, constitutes an employer for purposes of the MWPCL, and is jointly and severally responsible for the wages owed to Plaintiff and the putative class members under the MWPCL.

64. Defendants had a duty to pay wages to Plaintiff and the putative class members as agreed by all parties.

65. Defendants failed to uphold this duty in violation of the MWPCL.

66. This failure is remedied per the MWPCL's treble damages provision, for which all defendants are jointly and severally liable.

**COUNT III**

**Unjust Enrichment**

67. The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

68. Plaintiff and the putative class members were entitled to receive the share of the profits from each vehicle or service sale set forth in the pay plans.

69. Plaintiff and the putative class members did not receive the earned share; instead, part of their earned share was retained by Defendants as a result of the reductions.

70. The amount retained by Defendants as a result of the reductions constitutes a benefit conferred upon Defendants by Plaintiff and the putative class members.

71. Defendants, who created the reductions, were aware of and appreciated this benefit.

72. Defendants' acceptance or retention of the benefit, given Plaintiff's and the putative class members' entitlement to that benefit as part of their negotiated commissions, is inequitable.

## COUNT IV
## BREACH OF CONTRACT

73. The allegations in the foregoing paragraphs are incorporated by reference as if fully stated herein.

74. Plaintiff and the putative class members were entitled to receive the commission based on the profits from each vehicle/product sold set forth in the written pay plan, a contract between the parties.

75. Defendants MMH and CMH breached the contract with plaintiff and putative class members.

76. The Plaintiff and putative class members were damaged related to the Defendants MMH and CMH's breach by way of reduced commissions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all individuals similarly situated, requests that judgment be entered against Defendants as follows:

On the first cause of action, Plaintiff requests a judgment be entered against Defendants and in favor of Plaintiff and the putative class members, for the full amount due and owing or to become due and owing to Plaintiff, the commission class, and the putative class members, along with costs, reasonable attorneys' fees, and such other and further relief as the Court deems just and proper under the circumstances.

On the second cause of action, Plaintiff seeks an award for Defendants' failure to pay wages under the MWPCL to Plaintiff and the putative class members, in an amount to be proven at trial and multiplied as required by law, and for such civil penalties, including reasonable attorneys' fees, permitted by law and such other and further relief as the Court deems just and proper under the circumstances.

On the third cause of action, Plaintiff and the putative class members seek an award for compensatory damages for the commissions defendants failed to pay to Plaintiff and the putative class members, in an amount to be proven at trial, along with costs, reasonable attorneys' fees, and such other and further relief as the Court deems just and proper under the circumstances.

On the fourth cause of action, Plaintiff and the putative class members seek an award for compensatory damages for the commissions defendants failed to pay to Plaintiff and the putative class members, in an amount to be proven at trial, along with costs, reasonable attorneys' fees, and such other and further relief as the Court deems just and proper under the circumstances.

**JURY DEMAND**

Plaintiff, on behalf of himself, the putative class members requests a trial by jury of all claims so triable.

Dated: September 12, 2022

Respectfully submitted,

Brian J. Markovitz, # 15859
Michal Shinnar, # 19757
Joseph Greenwald & Laake, P.A
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770

(301) 220-2200 (tel.)
(301) 220-1214 (fax)
*Co-Counsel for Plaintiff and class members*

Jonathan Rudnick /BJM

Jonathan Rudnick (*pro hac vice forthcoming)*
The Law Office of Jonathan Rudnick LLC
788 Shrewsbury Avenue, Suite 204
Tinton Falls, New Jersey 07724
(732) 842-2070 (tel.)
(732) 879-0213 (fax)
*Co-Counsel for Plaintiff and class members*