IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN SCOTT BARMBY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-22-2312** |
| **OURISMAN CHEVROLET, CO., INC.,** *et al.*, | * | |
| **Defendants.** | * | |

**MEMORANDUM OPINION**

John Scott Barmby, on behalf of himself and a similarly situated class, filed suit against his former employers Ourisman Chevrolet, Co., Inc. d/b/a Chevrolet Marlow Heights ("Ourisman Chevrolet"), Ourisman Imports, Inc. d/b/a Ourisman Mitsubishi of Marlow Heights ("Ourisman Imports"), H Street LLC ("H Street"), and Christopher Ourisman.  ECF 1 & 6.  Barmby alleges that the defendants failed to pay him and other employees all the wages they were due under commission-based compensation agreements.  He asserts four claims: accounting, a violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq*., unjust enrichment, and breach of contract.  ECF 6.  The defendants move to compel arbitration and dismiss or stay the case.  ECF 9.  That motion is fully briefed.  ECF 12 & 20.  No hearing is necessary.  Loc. R. 105.6 (D. Md. 2023).  For the following reasons, the defendants' motion is granted, Barmby shall submit his claims to arbitration on an individual basis, and this case is stayed pending resolution of arbitration.[1]

---

[1] Barmby moves for leave to file a surreply to the motion to compel arbitration.  ECF 23.  That motion, too, is fully briefed.  ECF 24 & 27.  The local rules do not allow surreplies unless permitted by the Court.  Loc. R. 105.2(a) (D. Md. 2023).  Barmby's motion is granted, and the Court has considered the surreply.

## I.      Background

Barmby alleges the following facts.  Ourisman Chevrolet and Ourisman Imports are car dealerships.  ECF 6, ¶¶ 7–8.  Ourisman is the majority owner of both entities.  *Id.* ¶ 11.  H Street is a management company that sets, manages, oversees, and implements the corporate policies and procedures for Ourisman Chevrolet and Ourisman Imports, including the compensation policies at issue in this case.  *Id.* ¶ 10.

Barmby worked for the defendants from approximately 2013 until June 13, 2022.  *Id.* ¶ 5.  His most recent job title was Finance Operations Manager.  *Id.* ¶ 16.  Along with other employees within the putative class, Barmby was paid pursuant to a written, commission-based pay plan.  *Id.* ¶ 17.  The putative class, defined as "[a]ll individuals who are or were employed by [the defendants] from September 2019 to the present, and who earned a commission on the sale of any used or new vehicle or product or service during that time span[,]" includes sales staff and management staff such as general sales managers and finance managers.  *Id.* ¶¶ 17, 39.  Barmby anticipates approximately 80 class members.  *Id.* ¶ 13.  The pay plan entitled these employees to a percentage of the dealer profit called "gross commissionable proceeds."  *Id.* ¶¶ 18, 24–25.  The non-discretionary commissions were required by the terms of a written pay plan that each employee signed.  *Id.* ¶ 22.

The defendants allegedly violated the pay plan by underpaying Barmby and other employees.  *Id.* ¶ 29.  In particular, the defendants hid the vehicle cost and chargeback information used to determine commissions and artificially inflated operational costs.  *Id.* ¶¶ 30–37.  For example, they added fictitious service charges, inflated cleaning and detailing costs, added several hundred dollars to the acquisition costs of new vehicles, assumed "estimated" chargebacks when calculating profits to inflate losses, and charged back all of a vehicle's purchase price rather than

just the profit.  *Id.* ¶ 35.  Barmby seeks an accounting of all commissions due and compensatory damages for breach of contract, unjust enrichment, and violations of Maryland's wage-protection statute.

The defendants move to compel arbitration.  They attached to their motion a June 2013 "Agreement to Waive Jury Trial and Arbitrate Dispute" signed by Barmby ("Arbitration Agreement").  ECF 9-3.  The Arbitration Agreement provides that Barmby and Ourisman Chevrolet

> agree to waive their rights to a jury trial and to submit to binding arbitration any and all disputes, complaints, or claims related to or arising out of the employee's employment or termination or any other relationship between the employee and the Company.  Such disputes, complaints or claims include, but are not limited to, . . . claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied; tort claims; any other alleged common law claims; and any alleged violation of federal, state or local statute, ordinance or regulation.

*Id.*  In response, Barmby attached to his opposition a June 2019 "Pay Plan for Finance Operations Manager-Scott Barmby" ("Pay Plan").  ECF 12-2.  The Pay Plan lays out the terms of Barmby's compensation, including bonuses.  *Id.*  It includes a merger clause that provides:

> **Entire Agreement**: The terms and conditions contained in the PAY PLAN FOR-FINANCE OPERATIONS MANAGER-SCOTT BARMBY represent the entire understanding of the parties hereto with respect to the FOMSB compensation plan. FOMSB hereby acknowledges and agrees that there are no other promises, inducements or commitments of any kind, whether written, oral, or implied with regard to FOMSB employment compensation.

*Id.* ¶ 9.  FOMSB refers to Finance Operations Manager Scott Barmby.  *Id.* ¶ 2.

## II.   Standard of Review

The defendants seek judicial enforcement of an arbitration agreement pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*  Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ."  9 U.S.C. § 2.  A party to an

arbitration agreement may ask the Court "to move . . . an arbitrable dispute out of court and into arbitration" by either staying the litigation or compelling arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (citing 9 U.S.C. §§ 3–4). Additionally, in this circuit, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Whatever the remedy, the Court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). Accordingly, the Court engages "in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (stating a motion to compel arbitration "call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues").

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477–78 (D. Md. 2012). When the validity of an arbitration agreement is in dispute, as here, "[m]otions to compel arbitration . . . are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011); *see Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 233 (4th Cir. 2019) ("To decide whether 'sufficient facts' support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test."). "In applying that standard, the court is entitled to consider materials other than the complaint and its supporting documents." *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 233. The defendants, as the moving parties, bear the burden of establishing they are entitled to judgment as

a matter of law.  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986).[2]

## III.   Discussion

To prevail on a motion to compel arbitration, a party must show

> (1) the existence of a dispute between the parties, (2) a written agreement that
> includes an arbitration provision which purports to cover the dispute, (3) the
> relationship of the transaction, which is evidenced by the agreement, to interstate
> or foreign commerce, and (4) the failure, neglect or refusal of the defendant to
> arbitrate the dispute.

*Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

"Whether a party has agreed to arbitrate an issue is a matter of contract interpretation[.]"  *Levin v.*

*Alms & Assocs.*, 634 F.3d 260, 266 (4th Cir. 2011).  "Although federal law governs the arbitrability

of disputes, ordinary state-law principles resolve issues regarding the formation of contracts."  *Am.*

*Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005).  Still, the "FAA's policy of

favoring arbitration augments ordinary rules of contract interpretation[] and requires all

ambiguities to be resolved in favor of arbitration."  *Ashford v. PricewaterhouseCoopers LLP*, 954

F.3d 678, 682–83 (4th Cir. 2020) (internal quotation marks and citations omitted).

Barmby does not challenge the existence of a dispute between the parties, the relationship

of his employment to interstate commerce, or his refusal to arbitrate the dispute.  He also does not

challenge that he and Ourisman Chevrolet entered into the Arbitration Agreement, that the

agreement was a valid and binding contract when he entered it, or that its language is broad enough

---

[2] This court has reviewed motions to dismiss and compel arbitration under Federal Rule of Civil
Procedure 12(b)(3).  *See Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548–49 (D. Md.
2019).  Under that standard, too, the Court views "the facts in the light most favorable to the
plaintiff" and may "freely consider evidence outside the pleadings."  *Id.* at 549 (quoting *Aggarao
v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012), and *Sucampo Pharm., Inc. v. Astellas
Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)).

to cover his claims.  Instead, he argues his claims no longer are subject to the Arbitration Agreement because the Pay Plan superseded the Arbitration Agreement with respect to pay disputes.  He also argues that, even if he is required to arbitrate his claims against Ourisman Chevrolet, the Court cannot compel arbitration of his claims against Ourisman Imports, H Street, or Ourisman because they are not parties to the Arbitration Agreement.  Finally, he argues that if the Court compels arbitration as to all defendants, the Court should not dismiss the class claims and instead should allow the arbitrator to determine whether the parties agreed to arbitrate them.

### A.  The Pay Plan Did Not Supersede the Arbitration Agreement

Barmby contends that the 2019 Pay Plan, with its merger clause, superseded the 2013 Arbitration Agreement with respect to disputes over his compensation.  The defendants counter that the Pay Plan did not supersede the Arbitration Agreement because the merger clause concerned only the subject matter of the Pay Plan and the Pay Plan did not mention dispute resolution.  The parties agree that Maryland contract law applies.  *See Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005).

Under Maryland law, a novation "is a new contractual relation that extinguishes the contract that was previously in existence between the parties."  *Mercantile Club, Inc. v. Scherr*, 651 A.2d 456, 464 (Md. Ct. Spec. App. 1995).  To establish a novation, a party must prove:  "(1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract; and (4) the extinguishment of the old contract, by the substitution of the new one."  *Id.* (quoting *I.W. Berman Props. v. Porter Bros., Inc.*, 344 A.2d 65, 70 (Md. 1975)); *Aggarao*, 675 F.3d at 367.  "Maryland courts 'never presume[]' that a novation occurred; instead, 'the party asserting it must establish clearly and satisfactorily that there was an intention, concurred in by all the parties, that the existing obligation be discharged by the new obligation.'"  *Bioberica*

6

*Neb., Inc. v. Nutramax Mfg.*, 554 F. Supp. 3d 729, 737–38 (D. Md. 2021) (quoting *I.W. Berman Props.*, 344 A.2d at 70).  These requirements are "fairly stringent," but the requisite intent can be inferred from "the facts and circumstances surrounding the transaction" as well as "subsequent conduct by the parties."  *Id.* (quoting *I.W. Berman Props.*, 344 A.2d at 70).

The parties have not identified, and the Court has not found, an analogous case applying Maryland law.  But the Fourth Circuit's decision in *Aggarao* is informative.   In *Aggarao*, the court considered whether, under Maryland law, two subsequent agreements "constituted a novation that served to supersede" an earlier agreement that included an arbitration clause.  675 F.3d at 367.  The court held the plaintiff's "effort to show a novation with respect to the Arbitration Clause fail[ed] on the fourth element"—the extinguishment of an old contract by the substitution of a new one.  *Id.*  It stated, "[w]hen a party seeking to avoid arbitration contends that the clause providing for arbitration has been superseded by some other agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication."  *Id.* at 368 (quoting *Zandford v. Prudential-Bache Sec., Inc.*, 112 F.3d 723, 727 (4th Cir. 1997)).  The court found the plaintiff's arguments fell short because "there [was] no indication, either express or implied, that both parties intended" the later agreements to constitute a novation or repeal the arbitration clause.  *Id.* at 367.  Rather, the agreements could be read together and harmonized in a manner that satisfied "two prime interpretive dictates regarding judicial review [—] that *all* contractual provisions be read to make sense, and that arbitration be favored."  *Id.* at 368 (quoting *H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs & Helpers Local Union No. 384*, 755 F.2d 324, 329 (3d Cir. 1985)).  Although *Aggarao* is factually distinguishable from this case—the agreements in *Aggarao* were entered one day apart and expressly referred to each other, and the plaintiff's novation argument was not based

on a merger clause—the Fourth Circuit's analysis lays out the salient principles of novation under Maryland law in the context of an arbitration agreement.

As stated in *Aggarao*, the Court must harmonize the terms of the Pay Plan and the Arbitration Agreement, to the extent possible.  *See id.*; *see also Rourke v. Amchem Prods., Inc.*, 863 A.2d 926, 942 (Md. 2004) (noting, in arbitration context, "the requirement that all provisions of a contract be read together harmoniously, so that each can be given effect"); *Shebby v. Stifel, Nicolaus & Co.*, No. DKC-17-2847, 2018 WL 638291, at *4 (D. Md. Jan. 31, 2018) (applying similar rule of Missouri law that "all the provisions in the writings can and should be harmonized and given effect, including a valid arbitration agreement").  Harmonization requires the application of Maryland's rules of contract interpretation.  "Under Maryland law, '[i]f the language of a contract is unambiguous, [Maryland courts] give effect to its plain meaning and do not contemplate what the parties may have subjectively intended by certain terms at the time of formation.'"  *Martz v. Day Dev. Co.*, 35 F.4th 220, 225 (4th Cir. 2022) (quoting *Cochran v. Norkunas*, 919 A.2d 700, 709 (Md. 2007)).  The plain meaning is determined by "focus[ing] on the four corners of the agreement."  *Id.* (quoting *Cochran*, 919 A.2d at 710).

The Court first considers the Pay Plan, which was just that:  the plan for Barmby's pay.  It identified his position, salary, and term of employment; it set the formula for his commission-based compensation; and it established his entitlement to his salary and commissions in the event of his termination.  The Pay Plan's merger clause states that the plan represents "the entire understanding of the parties hereto with respect to the FOMSB compensation plan" and that "there are no other promises, inducements or commitments of any kind . . . with regard to FOMSB employment compensation."  ECF 12-2, ¶ 9.  The merger clause states not once but *twice* that the Pay Plan represents the parties' complete understanding with respect to Barmby's compensation.

8

The Pay Plan does not address dispute resolution or refer to the earlier Arbitration Agreement. Given the subject matter of the Pay Plan and the plain and unambiguous language of the merger clause, the Court finds that the clause merged preexisting promises, commitments, and understandings related to the terms of Barmby's compensation, such as previous pay plans that may have used different commission formulas or outlined different benefits.  The Pay Plan can be read harmoniously with the Arbitration Agreement.  In the Arbitration Agreement, Barmby and Ourisman Chevrolet agreed "to submit to binding arbitration any and all disputes, complaints, or claims related to or arising out of the employee's employment or termination or any other relationship between the employee and the Company."  ECF 9-3.  The Arbitration Agreement concerned the resolution of disputes, including "claims for wages or other compensation due."  *Id*. The Pay Plan does not discuss the forum for disputes over Barmby's wages or compensation; it merely sets the terms of his compensation.  And when there is a dispute over those terms, as there is here, the parties remain bound by their earlier promise to arbitrate it.  The Court finds no express or implied indication that Barmby and Ourisman Chevrolet intended to extinguish the Arbitration Agreement when they executed the Pay Plan.  Thus, the Pay Plan did not supersede or terminate the parties' preexisting agreement to arbitrate.

Barmby argues the Pay Plan's merger clause implicitly carved out from the Arbitration Agreement any disputes regarding his compensation.  As he reads the merger clause, "the entire understanding of the parties" with respect to the "compensation plan" includes the resolution of disputes over his compensation.  From that premise, which has no support in the contractual language, Barmby argues compelling arbitration would render the merger clause meaningless or cause a nonsensical result by upholding a prior promise to arbitrate claims related to his compensation despite the parties' agreement in the Pay Plan that there were no other promises with

respect to his compensation.  Barmby's argument is at odds with the plain language of the merger clause, which limited the merger to the parties' understanding of Barmby's compensation plan. The Pay Plan is silent on arbitration, and compelling arbitration of claims relating to his compensation does not render the limited merger clause meaningless.

To support his broader reading of the merger clause, Barmby cites several out-of-circuit cases that did not apply Maryland law but involved similar situations and similarly worded merger clauses.  Two warrant discussion.[3]  In *Kantz v. AT&T, Inc.*, the plaintiff entered an arbitration agreement covering any claims she might have against her employer.  No. 21-1620, 2022 WL 413946, at *1 (3d Cir. Feb. 10, 2022) (unpublished).  Years later, she was terminated and signed a general release and waiver in exchange for severance benefits.  *Id.*  The general release stated it "set forth the entire agreement between [the employee] and the Companies concerning termination of [her] employment.  Any other representations, written or oral, are replaced by the provisions of this document and are no longer effective unless they are contained in this document."  *Id.*  When the plaintiff filed a putative collective action, her employer moved to compel arbitration.  *Id.*  In a brief opinion, the Third Circuit agreed with the plaintiff that the general release superseded the arbitration agreement as it related to termination disputes.  *Id.* at *2.  It noted "the two agreements did not concern precisely the same subject matter"—the arbitration agreement extended to areas other than termination disputes—but it reasoned "a complete subject-matter overlap is not a

---

[3] The parties cite numerous cases to support their respective positions.  Most are readily distinguishable.  *See, e.g.*, *USB Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319 (4th Cir. 2013) (FINRA context); *Thelen Reid Brown Raysman & Steiner LLP v. Marland*, 319 F. App'x 676 (9th Cir. 2009) (unpublished) (involving merger clause that indicated the later agreement was the entire agreement between the parties, not just the entire agreement relating to a discrete subject matter); *Sher v. Goldman Sachs*, No. CCB-11-2796, 2012 WL 1377066 (D. Md. Apr. 19, 2012) (applying New York law, which sets a higher bar than Maryland law for the supersession of an agreement to arbitrate).  The Court cites and discusses only the most on-point of the parties' cases.

requirement for supersession under Pennsylvania law." *Id.* Implicitly, the court assumed dispute resolution was part of the subject matter of an agreement that did not mention dispute resolution. The court concluded by noting the employer "could have included an arbitration provision in the 2019 general release but it did not do so." *Id.*

And, in *Riley Manufacturing Co. v. Anchor Glass Container Corp.*, the Tenth Circuit concluded a later agreement with a merger clause superseded an earlier arbitration agreement with respect to disputes over the subject matter of the later agreement. 157 F.3d 775, 783 (10th Cir. 1998). A 1991 manufacturing agreement between the plaintiff and the defendant included an arbitration clause. *Id.* at 777–78. A 1995 settlement agreement that released claims under the manufacturing agreement included a merger clause that stated, "[t]his agreement constitutes the entire agreement of the parties hereto and cancels, terminates and supersedes any and all prior representations and agreements relating to the subject matter thereof." *Id.* at 778. The lower court had agreed with the plaintiff that the merger clause terminated and superseded the entirety of the manufacturing agreement. *Id.* at 782. The Tenth Circuit reversed in part, holding the merger clause "cancel[ed] only those provisions of the Manufacturing Agreement that related to the specific 'subject matter' of the Settlement Agreement," which it defined by referring to the agreement's "whereas" clauses and substantive provisions. *Id.* at 783–84. Like the court in *Kantz*, the court in *Riley Manufacturing* implicitly found dispute resolution falls within the subject matter of an agreement for purposes of a merger clause, even when the agreement does not mention dispute resolution.

The Court is not persuaded to follow *Kantz* or *Riley Manufacturing*, neither of which involved Maryland law or is binding authority. It is true that the merger clauses at issue in those cases appear similar in scope to the merger clause in the Pay Plan, despite using somewhat different

language.  Each expressly merged prior commitments relating to the subject matter of the agreement that contained the merger clause, like the merger clause in the Pay Plan.  But the later agreements in *Kantz* and *Riley Manufacturing* concerned the release of claims.  In that sense, the subject matter of those agreements more closely related to dispute resolution, so there was firmer ground on which to conclude the merger clauses terminated the earlier arbitration agreements. Indeed, the district court in *Kantz* reasoned the two agreements in that case "*both* addressed the *resolution of disputes*" and, on that basis, concluded that the promise to arbitrate was displaced by "[t]he agreement to extinguish the right to arbitrate claims" in the later agreement.  *Kantz v. AT&T, Inc.*, No. CV 20-531, 2021 WL 1061190, at *4 (E.D. Pa. Mar. 19, 2021), *aff'd*, 2022 WL 413946. The Pay Plan, by contrast, did not include a release or otherwise concern actual or potential claims between Barmby and Ourisman Chevrolet.

In similar cases that did not involve a release of claims, other courts have concluded a later agreement that contains a merger clause but is silent on dispute resolution does not supersede an earlier agreement to arbitrate.  *See, e.g.*, *Bowser v. Burns Chevrolet Cadillac, Inc.*, No. 0:16-1551-TLW, 2017 WL 10810029, at *2 (D.S.C. May 3, 2017) (finding subsequent agreement's merger clause, which merged agreements "related to this contract," was silent on dispute resolution and did not merge an earlier arbitration agreement); *Estabrook v. Piper Jaffray Cos.*, 492 F. Supp. 2d 922, 926–27 (N.D. Ill. 2007) (finding later agreement, which included a subject-matter limited merger clause, was silent on dispute resolution and concluding "more than mere silence as to arbitrability is necessary to override a previous agreement to arbitrate"); *Cione v. Foresters Equity Servs., Inc.*, 68 Cal. Rptr. 2d 167, 173 (Cal. App. 1997) (concluding "neither in its integration clause nor elsewhere did the written employment agreement suggest it stated the parties' entire agreement as to all matters or that it otherwise superseded [the] prior written arbitration

12

agreement"); *see also Pelletier v. Yellow Transp, Inc.*, 549 F.3d 578, 581–82 (1st Cir. 2008) (noting a dispute resolution agreement "establishes a legal right which is *analytically distinct* from the rights being asserted in the dispute to which it is addressed" and a holding subject-matter limited merger clause did not nullify a contemporaneous arbitration agreement) (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 195 (3d Cir. 1983), *overruled on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989)).[4]

Given Maryland's high bar for novation, the Fourth Circuit's guidance in *Aggarao*, and the federal policy favoring arbitration, the Court concludes the parties did not expressly or by clear implication intend for the Pay Plan to supersede and terminate the Arbitration Agreement. Barmby has not shown "the extinguishment of the old contract, by the substitution of the new one." *See Mercantile Club, Inc.*, 651 A.2d at 464. The Arbitration Agreement remains valid and binding, and his claims fall within its scope.

### B. The Non-signatory Defendants May Compel Arbitration

Generally, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Even though Ourisman Chevrolet and Barmby were the only parties to the Arbitration Agreement, the defendants argue the doctrine of concerted-misconduct estoppel allows each of them to compel arbitration under the agreement. Concerted-misconduct estoppel is one of the two circumstances in which "equitable estoppel

---

[4] At least one court has found a later agreement that included both a merger clause and a release of claims also did not supersede an earlier agreement to arbitrate. *See Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140, 145–46 (D.D.C. 2014) (holding "the claims waived and released by the plaintiff" was a distinct subject matter from "the forum for the resolution of claims").

allows a nonsignatory to compel arbitration." *Brantley v. Rep. Mortg. Ins. Co.*, 424 F.3d 392, 395 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)). Concerted-misconduct estoppel applies when there are allegations of "coordinated behavior between a signatory and a non-signatory" defendant and the claims against both are "based on the same facts," "inherently inseparable," and "fall within the scope of the arbitration clause[.]" *Aggarao*, 675 F.3d at 374.

Barmby does not distinguish between the defendants in his complaint. He alleges all of them engaged in the same misconduct. *See, e.g.*, ECF 6, ¶¶ 16–17, 24, 35, 37. And the broad scope of the Arbitration Agreement covers each of Barmby's individual claims. Thus, the requirements for concerted-misconduct estoppel are met. *See In re Titanium Dixoide Antitrust Litig.*, 962 F. Supp. 2d 840, 851 (D. Md. 2013).

Rather than contest these requirements, Barmby argues that "under any equitable estoppel doctrine, the non-signatory who seeks to enforce arbitration against a signatory must demonstrate that the signatory's claims rely upon the same agreement that contains the arbitration provision." ECF 12, at 23–24 (emphasis deleted). This argument is premised on a misunderstanding of the law. As authority, Barmby cites *American Bankers Insurance Group, Inc. v. Long*, 453 F.3d 623, 629 (4th Cir. 2006), in which the court addressed the other circumstance that may support equitable estoppel: relation-to estoppel. Relation-to estoppel applies "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory." *Brantley*, 424 F.3d at 396 (quoting *MS Dealer Serv. Corp.*, 177 F.3d at 947). The *American Bankers* Court considered which of two tests—the "rely on" test or the "direct benefit" test—should be used to determine whether the requirements

14

for relation-to estoppel were met. 453 F.3d at 629. Along the way, the court stated "[b]oth tests examine whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." *Id.* Barmby misinterprets "both tests" to refer to relation-to and concerted-misconduct estoppel. However, the court in *American Bankers* expressly declined to consider whether concerted-misconduct estoppel applied. *See id.* at 627 n.3 (stating the court "need not apply this second type of equitable estoppel to decide this appeal"). The other cases Barmby cites are similarly inapt. *See, e.g.*, *Westenfelder v. Novo Ventures (US), Inc.*, 797 F. Supp. 2d 188, 191–92 (D. Mass. 2011) (declining to compel a claim to arbitration when it arose under a different contract than the contract containing the arbitration clause, without discussing concerted-misconduct estoppel); *DP Sols., Inc. v. Help Desk Now, Inc.*, No. 1:08CV104, 2008 WL 4543785, at *3 (M.D.N.C. Oct. 9, 2008) (addressing relation-to estoppel and noting concerted-misconduct estoppel did not apply because "no signatory to the [arbitration] agreement seeks to compel arbitration").

This court previously has allowed non-signatories to compel arbitration based on concerted-misconduct estoppel without determining whether the claims arose from the agreement containing the arbitration clause. In *In re Titanium Dioxide Antitrust Litigation*, the court identified the two circumstances for equitable estoppel set forth in *Brantley* as separate and independent: "The doctrine of equitable estoppel applies in two cases-when the signatory's claims arise out of the agreement containing the clause, or when the signatory alleges concerted misconduct by the nonsignatory and the signatory." 962 F. Supp. 2d at 850. Because concerted-misconduct estoppel applied, the court held it did not need to "determine whether the other ground for equitable estoppel—that the signatory's claims 'arise out of and relate directly to the written agreement,' *see Am. Bankers,* 453 F.3d at 627—would be satisfied." *Id.* at 851 & n.6.

Because the defendants have established the requirements for concerted-misconduct estoppel, the non-signatory defendants may compel arbitration based on the Arbitration Agreement.

### C. The Parties did not Agree to Class Arbitration

The defendants request an order "compelling the arbitration to proceed only on Plaintiff's individual claims, and not as a collective or class action arbitration." ECF 20, at 21. They argue class arbitration is not available when an arbitration agreement is silent or ambiguous about that possibility. *See Lamps Plus, Inc. v. Varela*, --- U.S. ----, 139 S. Ct. 1407, 1419 (2019) ("Like silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[] the principal advantage of arbitration.'") (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011)). Barmby does not debate that rule. Instead, he argues the question of class arbitrability must be left to the arbitrator.

"'[U]nless the parties clearly and unmistakably provide otherwise,' whether an arbitration agreement permits class arbitration is a question of arbitrability for the court." *Del Webb Comtys., Inc. v. Carlson*, 817 F.3d 867, 876 (4th Cir. 2016) (quoting *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 597–99 (6th Cir. 2013)). "The 'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 553 (D. Md. 2019) (quoting *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012)). It is not enough to simply say "that the arbitrator determines the meaning of any disputed contractual terms." *Id.* (quoting *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999). However, it is sufficient to state that "all disputes concerning the arbitrability of particular disputes under this

contract are hereby committed to arbitration, or words to that clear effect." *Id.* (quoting *Carson*, 175 F.3d at 330–31).

Barmby argues the Arbitration Agreement's incorporation of the American Arbitration Association ("AAA") rules constitutes clear and unmistakable evidence of the parties' intent to arbitrate class arbitrability.   The Arbitration Agreement states, "Initiation and request for arbitration shall be accomplished in accordance with the Employment Dispute Resolution Rules of the [AAA].  The arbitration shall be finally and confidentially resolved pursuant to the current AAA rules."  ECF 9-3.  The AAA's Supplementary Rules for Class Arbitrations, which apply "to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA,]" provide that "the arbitrator shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class[.]" AAA Supplementary Rules for Class Arbitrations, Rs. 1 & 3 (Eff. Oct. 8, 2003).  The defendants respond that several circuits have held the simple incorporation of the AAA rules into an arbitration agreement does not constitute sufficient evidence of an intent to arbitrate class arbitrability.  They argue class arbitration is markedly different and more burdensome than bilateral arbitration and, therefore, that the bar for the delegation of class arbitrability must be higher.

The parties' briefing makes three things clear.  First, there is a circuit split on this issue. *Compare Jock v. Sterling Jewelers Inc.*, 942 F.3d 617, 623–24 (2d Cir. 2019) (holding "incorporation of the AAA Rules evinces agreement to have the arbitrator decide the question of class arbitrability"); *and JPay, Inc. v. Kobel*, 904 F.3d 923, 937–38 (11th Cir. 2018) (same), *with Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 973 (8th Cir. 2017) ("Incorporation of AAA Rules by references is insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class arbitration."); *and Chesapeake Appalachia, LLC v. Scout*

*Petroleum, LLC*, 809 F.3d 746, 764 (3d Cir. 2016) (holding the incorporation of AAA rules "fail[s] to satisfy the onerous burden of undoing the presumption in favor of judicial resolution of the question of class arbitrability"). Second, the Fourth Circuit has not formally weighed in. Finally, both the Fourth Circuit and this court have concluded the incorporation of the arbitral rules provides clear and unmistakable evidence of the parties' intent to arbitrate arbitrability in other contexts. *See Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 527–28 (4th Cir. 2017) (holding, "in the context of a commercial contract between sophisticated parties, the explicit incorporation of" arbitral rules "substantively identical" to the AAA rules "serves as 'clear and unmistakable evidence' of the parties' intent to arbitrate arbitrability"); *Malamatis v. ATI Holdings, LLC*, No. ELH-21-2226, 2022 WL 1591406, at *25 (D. Md. May 19, 2022) (holding the incorporation of the AAA rules constituted "unmistakably clear evidence that the parties intended to delegate the question of arbitrability to the arbitrator").[5]

While the Fourth Circuit has not directly addressed whether the incorporation of arbitral rules is sufficient to evince the parties' intent to delegate the question of class arbitrability to the arbitrator, its decision in *Del Webb Communities* strongly suggests the court would find the incorporation of arbitral rules insufficient to delegate the question. In that case, the court held the parties had not unmistakably agreed that the arbitrator would decide whether their agreement authorized class arbitration. 817 F.3d at 877. It found the agreement said "nothing at all about the subject." *Id.* This was so despite the arbitration clause providing the "rules of the [AAA],

---

[5] In past cases, the sophistication of the parties weighed heavily in this court's analysis. *See Stone*, 361 F. Supp. 3d at 553–55 (determining arbitrability when one party to the arbitration agreement was unsophisticated and stating "it strains credulity to believe that the consumer knew—much less intended—that the cross-reference directed an arbitrator to decide arbitrability"). However, unlike the unsophisticated party in *Stone*, Barmby is the party who seeks to rely on the incorporation of the AAA rules to let the arbitrator determine class arbitrability.

published for construction industry arbitrations, shall govern the arbitration proceeding and the method of appointment of the arbitrator." *See id.* at 869. In reaching its conclusion, the court discussed at length "the significant distinctions between class and bilateral arbitration[.]" *Id.* at 875. It noted the typical benefits of arbitration—"less rigorous procedural formalities, lower costs, privacy and confidentiality, greater efficiency, specialized adjudicators, and . . . finality"—are "dramatically upended in class arbitration, which brings with it higher risks for defendants." *Id.* So, while the Fourth Circuit was not squarely presented with the question of whether the incorporation of arbitral rules delegates the issue of class arbitrability and the court might reach a different conclusion in such a case, *Del Webb Communities* indicates the Fourth Circuit would be more likely to agree with the Third and Eighth Circuits and hold that the court determines whether class claims are arbitrable in such cases.

Here, the Arbitration Agreement does not mention class claims. It extends to "any and all disputes, complaints, or claims related to or arising out of the employee's employment or termination or any other relationship between the employee and the Company[,]" including "any alleged violation of federal, state or local statute, ordinance or regulation." ECF 9-3. This language is broad in scope, but it also is written in bilateral terms ("the employee"). On remand in *Del Webb Communities*, the district court held similar bilateral language combined with silence on the question of class arbitration did not authorize class arbitration, and the Fourth Circuit later affirmed. No. 9:14-CV-1877-PMD, 2017 WL 1050139, at *2 (D.S.C. Feb. 1, 2017), *aff'd*, 698 F. App'x 761 (4th Cir. 2017) (unpublished per curiam). Thus, the Court concludes the Arbitration Agreement provides for bilateral, rather than class, arbitration. Even if the agreement's broad language gave rise to ambiguity on the availability of class arbitration—and it does not—under

*Lamps Plus*, ambiguity is not enough and more would be needed to find class claims arbitrable. 139 S. Ct. at 1419.

     The Court will compel Barmby to bilateral arbitration.

**IV.**   **Conclusion**

     The defendants' motion to compel arbitration is granted.  Barmby shall submit his claims against the defendants to arbitration on an individual basis.  This case is stayed pending resolution of arbitration.  *See* 9 U.S.C. § 3.[6]  A separate Order shall issue.

Date: July 14, 2023

                                         Deborah L. Boardman
                                         United States District Judge

[6] Because Barmby cannot arbitrate his class claims, not all issues in this case are arbitrable, and dismissal is not warranted.  *See Choice Hotels*, 252 F.3d at 709–10.